**In re Dale Franklin ASPEDON & Dorothy Pauline Aspedon, Debtors.**

**Dale Franklin ASPEDON & Dorothy Pauline Aspedon, Plaintiffs,**

**v.**

**Carol LABBEE & Ardith K. Jenson, as Executors of the Estate of Lynn E. Jenson, and Lynn E. Jenson Corp., Defendants.**

**Bankruptcy No. 86–2425–W.**
**Adv. No. 87–0040.**

United States Bankruptcy Court,
S.D. Iowa.

May 12, 1987.

James H. Thompson, Jr., North Kansas City, Mo., for plaintiffs/debtors.

Peter J. Peters, Council Bluffs, Iowa, for defendants.

## MEMORANDUM OPINION AND ORDER

FRANK W. KOGER, Bankruptcy Judge.

This adversary complaint came before the Court as well as a Motion to Dismiss, Motion for Relief from the Stay and a hearing on debtors' Disclosure Statement. The adversary proceeding under Section 548 sought to set aside an allegedly fraudulent transfer of an undivided one-half interest in 258 acres of real estate through a levy and sheriff's sale. Defendants and debtors had been engaged in a long term levee feud, punctuated by frequent resort to the use of criminal charges, and finally civil litigation and the judgment that culminated in the sheriff's sale.

Defendants obtained a jury verdict against debtor Dale Franklin Aspedon on September 12, 1983, for $60,000.00 with interest at 10% per annum from July 26, 1982. This judgment was appealed and debtor Dorothy P. Aspedon became the surety on a supersedeas bond to stay action on the judgment. On March 14, 1984, the debtors executed and filed a deed from themselves to themselves, creating a tenancy in common in their 298 acre farm. At that same time, the debtors signed a promissory note for $68,500.00 and secured it with a real estate mortgage on the entire farm to the Valley National Bank of Fremont County. On September 30, 1985, the judgment in the District Court having been affirmed and no payment made, the District Court entered judgment against debtor Dorothy P. Aspedon for $60,000.00 with interest at 10% per annum from July 26, 1982, on the surety bond. On October 23, 1985, debtors platted a 40 acre homestead in the center of the farm. That acreage encompassed all of the buildings and improvements on the premises and is not involved in this action. Meanwhile debtors had not paid the real estate taxes and $10,673.76 had accrued by November 25, 1985.

On November 25, 1985, the Sheriff of Fremont County, Iowa, sold at a sheriff's sale, debtor Dale Aspedon's undivided one-half interest in the non-homestead acreage of 258 acres. This interest was subject to the real estate taxes but was ahead of the $68,500.00 mortgage since it was a lien from the date of the original rendition in District Court. The judgment creditor was the successful bidder for $27,000.00, a portion of his original $60,000.00 judgment.

Debtors Dale and Dorothy Aspedon subsequently filed their petition in this Court and filed to set aside the sheriff's sale under Section 548 as being a fraudulent transfer in that a reasonably equivalent value was not realized by the debtor.

Section 548, in pertinent portion, provides:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

From the recital of the evidence presented as well as the schedules and testimony as to assets and liability, the Court had no difficulty in determining that the time ele-

ments and insolvency elements of Section 548 were well met by debtors. The only problem that the Court faced was a determination of what an undivided one-half interest in 258 acres of debtors' farm was actually worth, since it is only from that point of reference that a Court can actually determine if $27,000.00 was a reasonably equivalent value therefor. Only one expert was called—that by debtors—and defendants tacitly admitted that he was well qualified and reasonable in his opinion. It was his testimony that the 258 acres of unimproved farm ground had a total value on July 18, 1986 of $120,700.00 or approximately $468.00 per acre average. Only 187 acres were tillable with the balance of 71 acres being in pasture, roads and waste. When queried by the Court, the appraiser gave no concrete figures but opined that the value would have been somewhat higher on November 25, 1985 (the Magic Date of Sale) and somewhat lower on the hearing date in April of 1987.

The appraiser frankly admitted that he had never had any experience in valuing fractional interests in real estate holdings and had no firm opinion as to what kind of factor to apply to the total appraisal value to discount for the undivided interests. For the purpose of his written opinion, he had used a factor of 5% as a discount. He openly stated that he had no real basis for that factor and simply used it to indicate that some discount had to be considered. He further related that he had never sold an undivided fractional interest except where it was a family or probate sale and all the fractional owners were in agreement with the disposition.

The final piece of evidence then to be considered by the Court was the configuration of the land. A topographical map is attached hereto showing that the establishment of the homestead, while not completely dividing the total acreage into two non-contiguous pieces of ground, does severely restrict access from Tracts I, II and the East part of III to access to Tract IV and the West part of III.

Since the issuance of *Durrett v. Washington National Ins. Co.*, 621 F.2d 201 (5th Cir.1980) the widely contrasting views of whether a foreclosure is a transfer under Section 548 has been as diversely divined as any issue in bankruptcy law. If the Court's count is correct, the score now is three Circuits saying "yes" and two Circuits saying "no" to such a proposition. Fortunately, this Court need not ponder the problem but has the pole star decision of *In re Hulm*, 738 F.2d 323 (8th Cir.1984) to follow. That case expresses the view this Court is not only mandated to adopt but in which it wholeheartedly concurs. Although *Hulm* reached only the factual issue of real estate foreclosure, many commentators, including this author, have foretold that it would and should apply to sheriff's sales, repossession of personal property and every instance of judicial and non-judicial termination of any interest of a debtor in any type of property. Koger & Acconcia. *The Hulm Decision: A Milestone for Creditors*, 91 Com.L.J. 301 (1986). While hoping that the Court is not engaging in a self-fulfilling prophecy, nevertheless counsel for the defendants have advanced neither evidence nor law that leads the Court to any other conclusion. The *Hulm* doctrine then requires the Court only to determine the market value of the debtor's interest at the time of the transfer, and based on that primordial finding to determine then whether the consideration flowing from the transferee is the "reasonably equivalent value" of the debtor's interest.

It is here that debtors fail their burden. The Court cannot, at least in good conscience, simply apply a mathematical factor and say that the 258 acres are worth $120,700.00 less $10,673.76 real estate taxes or $110,026.24 and that debtor Dale Aspedon's undivided one-half interest then is $55,013.12. To do so would be to ignore not only the basic facts but the inescapable conclusions of life and the concrete evidence that is in the record. Those facts include the inability of the appraiser to fix any definite discount factor or establish any basis or experience for setting such a factor. Those conclusions arise from the fact that the land is not now planted and may well not be planted at all this year.

That evidence shows that the fashion in which the 40 acre homestead is carved from the entirety practically divides it into two parcels. These factors, as well as the underlying ill feelings arising from the litigation, lead the Court to conclude that any purchaser would reap little immediate benefit from the purchase. Since the right of possession of, the right of use of, the right of quiet enjoyment to, and the right of profits from, an item owned are all a part of the bundle of rights that constitutes what we so carelessly call "property" and thereby are an integral part of setting its value, the fact that defendants are still enjoying none of the foregoing rights clearly depreciates the value of what they purchased. This action was brought by the debtors. It was their burden to convince this Court that $27,000.00 was not a reasonably equivalent value of an undivided one-half interest in a farm with a value of $110,026.24. Not only is the Court not so convinced, the Court is reasonably certain that few of that hypothetical and endangered species called "the reasonable man" would have parted company with $27,-000.00 to purchase the undivided one-half interest that came with the partition actions, time delays and other foreseeable problems built in.

The Court, therefore, finds that although the debtors proved all other elements of their Section 548 action, they failed to prove that $27,000.00 was not a reasonable equivalent value for debtor Dale Aspedon's undivided one-half interest. The Court, therefore, rules the action against the debtors.

This Memorandum Opinion and Order shall constitute Findings of Fact and Conclusions of Law in accordance with Rule 7052, Rules of Bankruptcy.

(Joins sheet 28)

(Joins sheet 33)

(Joins sheet 39) 821    1 410 000 FEET